# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| JILL M. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:10-CV-163-TLS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Jill M. Smith, brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's final decision denying her October 29, 2003, application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3), and her November 18, 2003, application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d). On June 3, 2010, this Court referred the matter to Magistrate Judge Roger Cosbey for a report and recommendation. On December 14, 2010, the Plaintiff filed her Opening Brief [ECF No. 22] which she corrected on December 22 [ECF No. 23], and on March 28, 2011, the Defendant filed his Memorandum in Support of Commissioner's Decision [ECF No. 29]. On April 26, the Plaintiff filed a Reply Brief [ECF No. 34]. On May 16, Magistrate Judge Cosbey filed a Report and Recommendation [ECF No. 36] recommending that the Commissioner's decision be reversed and the matter be remanded to the Administration Law Judge (ALJ) for further proceedings to consider the Plaintiff's use of a nebulizer and its impact, if any, on his findings that she could perform a significant number of jobs in the economy despite the limitations caused by her impairments.

On May 26, the Defendant filed his Objection to the Magistrate Judge's Report and Recommendation [ECF No. 37] requesting that the Court affirm the ALJ's decision. The Defendant maintains that because substantial evidence supports the ALJ's finding concerning the Plaintiff's residual functional capacity (RFC) and his inclusion of no environmental limitations, the Magistrate Judge erroneously found that the ALJ "played doctor" in finding that the record as a whole did not support the Plaintiff's testimony regarding her need for a nebulizer or the frequency with which she needed to use a nebulizer.

Because the Defendant has objected to the Magistrate Judge's Report and Recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate judge." *Id.*

**BACKGROUND**

The Plaintiff was involved in a severe car accident in January 2000. The Plaintiff filed applications for SSI and DIB alleging that she had become disabled on October 19, 2000, from injuries suffered in the accident, and also because she suffers from fibromyalgia, insulin-dependent diabetes, frequent urination, frequent diarrhea, asthmatic bronchitis, and morbid obesity. Her applications were denied, and on September 20, 2006, she appeared with counsel and testified at a hearing before ALJ Steven Neary. The Plaintiff's sister and a vocational expert (VE) also testified. The ALJ denied the Plaintiff's claim. After the Appeals Council reversed the ALJ's decision and remanded for a new hearing, a second hearing was held on April 9, 2008, at

which the Plaintiff and the VE testified. On July 30, 2009, the ALJ issued a written decision denying the Plaintiff's claim a second time. Applying the familiar five-step process for determining whether an applicant meets the definition of disability contained in the Social Security Act, *see Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008); 20 C.F.R. § 404.1520, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date, had severe impairments that did not meet a listing, and maintained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) except as reduced by occasional postural maneuvers involving climbing, crawling, stooping, crouching, and kneeling with standing and walking limited to no more than fifteen minutes at a time or one hour out of an eight-hour work day. The ALJ determined, based on the testimony of a VE, that this RFC did not permit the Plaintiff to perform her past relevant work, but that she perform other jobs that existed in significant number in the economy, specifically as a document preparer, callout operator, or charge account clerk. The ALJ thus denied the Plaintiff's DIB and SSI claims at step five of the analysis.

On April 2, 2010, the Appeals Council denied the Plaintiff's request for review. The ALJ's decision therefore became the final decision of the Commissioner, *see* 20 C.F.R. § 404.981, and the Plaintiff initiated a timely action for judicial review. In her Opening Brief, the Plaintiff advanced several arguments: (1) that substantial evidence did not support the ALJ's finding that the Plaintiff has no limitations on her ability to do sustained reaching, handling, or fingering; (2) that the ALJ's analysis of the babysitting work the Plaintiff did with her daughter was legally flawed; (3) that the ALJ relied on the wrong legal standard at step five of the analysis; (4) that the RFC finding did not include accommodations for the effects of treatment;

3

(5) that the ALJ erred by failing to award at least a period of disability and failing to explain his conclusion that there had been no twelve-month period in which the Plaintiff was unable to sustain full time work; (6) that the ALJ made his own independent medical determination regarding the Plaintiff's asthma when he discounted the effects of treatment on her RFC; and (7) that the ALJ committed legal error when he required the Plaintiff to provide objective support for symptoms such as pain, stiffness, and fatigue despite having a diagnosis of fibromyalgia. The Plaintiff requested that the Court reverse her case with instructions to the SSA to calculate and award disability benefits back to the date of her vehicle accident, January 14, 2000, or, alternatively, reverse and remand with instructions to correct all of the errors identified by the Plaintiff in her Brief.

On May 16, 2011, the Magistrate Judge submitted a Report and Recommendation. The Magistrate Judge considered the Plaintiff's argument that the ALJ "played doctor" when he concluded that it was not necessary for her to use a nebulizer six times a day as a breathing treatment. Finding merit in the Plaintiff's argument, the Magistrate Judge noted that no medical expert opined that the treatment was unnecessary and the ALJ appeared to have indulged in his own lay view of the Plaintiff's need, or lack thereof, for the nebulizer treatments prescribed by the Plaintiff's doctor, Dr. Thomas Miller. The Magistrate Judge further reasoned that the evidence was significant to the ALJ's findings because the VE testified that there would not be any jobs available for a hypothetical individual of the Plaintiff's age, experience, education, and limitations who, among other things, needs to take time out of the workday to use, and recover from the side effects of, a nebulizer. The Magistrate Judge concluded that the court had "no assurance that the ALJ's consideration of [the Plaintiff's] regular use of a nebulizer throughout

4

the day, a treatment which takes fifteen minutes and ostensibly causes fifteen minutes of after effects, constitutes mere harmless error." (Report and Recommendation 15–16, ECF No. 36.) The Magistrate Judge also found it problematic that the ALJ did not include an environmental limitation in the Plaintiff's RFC because an ALJ is required to evaluate restrictions to avoid exposure to odors and dust on an individual basis as these could erode the occupational base depending on the facts in the case record. Because the Magistrate Judge recommended a remand to consider the Plaintiff's use of a nebulizer and its impact, if any, on the step five analysis, the Magistrate Judge did not address the Plaintiff's other challenges to the ALJ's findings.

On May 26, the Defendant filed his Objection to the Magistrate Judge's Report and Recommendation [ECF No. 37]. The Defendant argues that substantial evidence supports the ALJ's finding regarding the Plaintiff's use of a nebulizer and his inclusion of no environmental limitations in the RFC. The Defendant submits that the Plaintiff did not show that her asthma and related breathing impairments were disabling, that no physician opined as to the severity of the breathing problems or the limitations they presented, that a prescription for inhalers does not speak to the frequency of their use, and that the ALJ was not required to fully credit the Plaintiff's testimony that the severity of her breathing problems necessitated frequent inhaler use. The Defendant asserts that the ALJ's hypothetical thus accurately identified the limitations credibly supported by the record. The Defendant also argues that the Court should not accept the Magistrate Judge's finding regarding environmental limitations because the jobs the VE testified the Plaintiff could perform do not have any environmental factors and, accordingly, any err in not assessing environmental limitations was harmless.

On June 3, the Plaintiff filed her Response to Defendant's Objections to Magistrate

5

Judge's Report [ECF No. 38]. The Plaintiff argues that the Magistrate Judge's findings with respect to her sixth argument before the Court is correct and requires reversal. She maintains that if the Court determines otherwise it should resolve her remaining arguments on their merits. Regarding the Plaintiff's need to nebulize, the Plaintiff contends that the ALJ made impermissible lay inferences when he second-guessed medical advice that no other doctor contradicted, overlooked the rule that disability applicants must follow the medical advice of their doctors, and failed to include in the RFC finding all of the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment.

**DISCUSSION**

A reviewing court will affirm the denial of disability benefits so long as the ALJ's decision is supported by substantial evidence, meaning evidence "sufficient for a reasonable person to accept as adequate to support the decision," and the court will not reweigh evidence or substitute its judgment for that of the ALJ. *Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008) (internal citation omitted). The ALJ must build a "logical bridge" between the evidence and his conclusions. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Even if "reasonable minds could differ" about whether a claimant is disabled, the Court will affirm the ALJ's denial of benefits so long as the decision has adequate support. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E). A claimant qualifies as disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, a claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

A claim of disability is determined under a five-step sequential analysis. *Craft*, 539 F.3d at 673.

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's [RFC] and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Id.* at 674. The applicant bears the burden or proof in each of the first four steps. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The government bears the burden of proof at the fifth step and must present evidence establishing that the applicant possessed the RFC to perform work that exists in a significant quantity in the national economy. 42 U.S.C. § 423(d)(2)(A); *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009).

Here, the findings being challenged are those related to the ALJ determination of the Plaintiff's RFC, which is the work the Plaintiff could still do despite her physical impairments and limitations, 20 C.F.R. § 404.1454(a), 416.945(a), and the resulting hypothetical questions

7

posed to the VE to determine if the Plaintiff could perform work that exists in significant numbers in the national economy. The Plaintiff argues that the ALJ's RFC assessment and his conclusion that she could perform a restricted range of sedentary work on a regular and continuing basis did not take into account the limits imposed by her medically-recognized breathing impairments. The Plaintiff claims that the ALJ erred because he did not consider her doctors repeatedly prescribing the breathing treatments she used; their repeated diagnoses of bronchitis and asthma related bronchitis; and her side effects from the prescribed treatments.

The Defendant argues that the ALJ reasonably considered the Plaintiff's breathing difficulties when he recounted the evidence at length, including findings showing no acute lung disease; the lack of any referral to a lung specialist; her repeated treatment for bronchitis and asthma-related bronchitis; her prescriptions for several inhalers and the frequency with which she used them, including her testimony at a second hearing that she used a nebulizer three times a day, down from the six times to which she testified during her first hearing; her testimony that she was jittery up to thirty minutes after she used her nebulizer; and the lack of any medical opinion indicating that her breathing problems were disabling or severe. The Defendant argues that the fact inhalers were prescribed does not mean that the Plaintiff was required to use them with the frequency to which she testified or that the ALJ was required to fully credit her testimony that she needed to use her inhaler as frequently as she did.

In his decision rejecting the Plaintiff's claim, the ALJ made the following analysis of her breathing related complaints:

> As to the claimant's breathing related complaints the evidence reflects an October 16, 2001, complaint of dyspnea, but chest x-rays showed no active pulmonary disease, and was reportedly diagnosed with bronchitis, which use of an antibiotic and Proventil improved her symptoms including dyspnea (Exhibit 5F, pages 3-4, 5-6).

8

> Treatment records of treating family physician Dr. Miller for the period May 21, 2002, through February 26, 2008, reflect only 9 episodes of diminished breath sounds (several only slightly diminished) associated with congestion, sinusitis/bronchitis and a sore throat and use of an inhaler with later prescription records showing use of several related medications (Exhibit 16F, pages 6- 8, 14, 37; 24F; 26F; 26F, pages 1, 3, 11-16, 38; 27F, pages 1-2, 5-6). February 27, 2004, complaints of asthma and wheezing were addressed via chest x-ray in comparison with a prior April 11, 2003, chest x-ray and revealed minimal cardiomegaly with clear lungs and no evidence of acute disease (Exhibit 14F, page 4). Examination on February 28, 2004, reflected no pulmonary or breathing related deficits (Exhibit 15F). While the claimant appears to have used inhalers and other related medications for breathing related deficits caused by colds/upper respiratory infections, sinusitis/bronchitis (asthmatic bronchitis) and possibly allergies, objective findings do not reflect significant deficits or active pulmonary disease, there was no referral for this condition nor is there evidence for a formal breathing disorder beyond those cited, nor even administration of a pulmonary function study. The overall evidence of record as a whole also does not reflect or support the claimant's testified to frequency of or even use of a nebulizer for her alleged severity of related symptoms. There is no opinion that these findings are disabling or even severe and as such the ALJ gives more weight to the minimal objective findings than to the claimant's testimony for significant deficit, as the objective evidence does not reasonably support greater functional deficit than that acknowledged herein by the ALJ in limiting the claimant to sedentary work, which type of work is primarily performed within an indoor clean air environment free of pulmonary irritants and would accommodate both these noted limitations and subjective allegations for shortness of breath that are only minimally reflected within the overall evidence of record.

(R. at 28–29.)

The Court finds that the ALJ sufficiently explained why the RFC does not include an additional environmental limitation to avoid exposure to odors or dust. This is a modification of the Magistrate Judge's findings. Although the medical evidence includes diagnoses of asthma and asthmatic bronchitis, the record does not contain any medical opinion regarding the severity of the Plaintiff's breathing problems or suggesting that certain environmental factors triggered or exacerbated these problems. Nor did the Plaintiff testify to any environmental conditions that were problematic. This explains the ALJ's decision not to include environmental limitations in her RFC, but to instead conclude that the restriction to sedentary work, "which type of work is

9

primarily performed within an indoor clean air environment free of pulmonary irritants" would accommodate her breathing related problems. (R. at 29.) This was proper in light of the record. *See Nelms v. Astrue*, 553 F.3d 1093, 1099 (7th Cir. 2009) (holding that even though the ALJ did not explicitly address the need to avoid concentrated exposure to dust, pollen, fumes, odors, and gases, he adequately addressed restriction on outside work in warm environments when he noted that the sedentary and light categories of work contained numerous jobs). The assumption that some sedentary work exists in the national economy that does not present a threat of concentrated exposure to dust, pollen, fumes, gases, odors or poor ventilation is not so unreasonable as to warrant reversal. *See, e.g., Britton v. Astrue*, 521 F.3d 799, 802 (7th Cir. 2008) (noting the testimony of vocational expert that the list of sedentary jobs within claimant's RFC would be available in the same numbers even with the further limitations of "no exposure to concentrated fumes, dust, environmental type irritants"). Moreover, while restrictions to avoid exposure to odors or dust must be evaluated on an individual basis as they could significantly erode the occupational base, *see* SSR 96-9p, the jobs identified by the VE in this case do not have environmental factors, *see* Dictionary of Occupational Titles (DICOT) 249.587-018, Document Preparer (4th ed. 1991), 1991 WL 672349; DICOT 237.367-014, Call-Out Operator (4th ed. 1991), 1991 WL 672186; DICOT 205.367-014, Charge-Account Clerk, 4th ed. 1991, 1991 WL 671715.[1] Thus, even if the ALJ erred in failing to include a restriction related to the Plaintiff's asthma in her RFC, the error was harmless and would not affect the outcome or

---

[1] The DICOT is a publication from the Department of Labor containing standardized occupational information. *See Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002). If an ALJ relies on VE testimony in making his decision, he must ask the VE whether his testimony conflicts with information provided in the DICOT. The ALJ in this case posed the appropriate question and the VE answered that his testimony was consistent with the DICOT. (R. at 746.)

require remand. *See Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003) (noting that the doctrine of harmless error is fully applicable to judicial review of administrative decisions).

The Magistrate Judge's findings and conclusion were not limited, however, solely to the ALJ's findings regarding environmental factors. After conducting a de novo review, the Court accepts the Magistrate Judge's finding that, "as far as is discernable from the record, the ALJ simply indulged in his own lay view of [the Plaintiff's] need, or lack thereof, for the nebulizer treatments prescribed by Dr. Miller, as no medical expert opined that they were unnecessary." (Report & Recommendation 15, ECF No. 36.) The ALJ did not construct a logical bridge between the evidence and the RFC with respect to the Plaintiff's treatments for asthma and other breathing related deficits, particularly her need to nebulize. The Plaintiff was prescribed medications and treatments for her breathing impairments, including nebulization. At the time of the second hearing, the Plaintiff testified that she was using the nebulizer three times per day, that each breathing treatment took fifteen minutes to administer, and that she felt dizzy and shaky for another fifteen minutes after the treatment was completed. This was consistent with the testimony she offered at the first hearing with the exception that the number of times she needed to nebulize each day had decreased. The Defendant argues that the fact that the Plaintiff's doctor prescribed inhalers does not mean that he required the Plaintiff to use them with the frequency to which she testified or that the ALJ had to fully credit the Plaintiff's testimony that her breathing problems were of such severity that she needed to use her inhalers as frequently as she did.

The ALJ was required, however, to provide an adequate bridge between the nebulizer testimony and his conclusions regarding the Plaintiff's RFC. The ALJ's statement that the "overall evidence of record as a whole does not reflect or support" the Plaintiff's "testi[mony]

11

[regarding the] frequency of or even use of a nebulizer for her alleged severity of related symptoms" did not provide such a bridge. The ALJ did not appear to acknowledge Dr. Miller's diagnosis of asthma and prescribed treatment when he determined that she did not even need to use a nebulizer. An ALJ must avoid substituting his own opinion for that of a treating physician without relying on medical evidence or authority in the record. 20 C.F.R. § 404.1527(d)(2). When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh. *Hofslien v. Barnhart*, 439 F.3d. 375, 377 (7th Cir. 2006) (citations omitted). The ALJ did not point to other substantial evidence in the record that contradicted the evidence from the Plaintiff's treating physician. Although the ALJ stated that the objective findings did not reflect significant deficits or active pulmonary disease, and that chest x-rays only showed minimal cardiomegaly with clear lungs and no evidence of acute disease, these findings do not address the asthma or the need to nebulize. The Plaintiff is not arguing that her breathing impairments were disabling, only that when the limitations caused by her breathing impairments are considered in combination with her other limitations, she is not able to perform even sedentary work. When assessing RFC, an ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p; *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In addition, an ALJ is required to include in his RFC finding "all the effects of treatment, [and the] limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-8p. The ALJ also noted that Dr. Miller's treatment records for the period May 21, 2002, through February 26, 2008, reflected only nine episodes of diminished breath sounds. However, this does not

undermine the evidence in the record supporting a need to nebulize as doing so may have actually helped the Plaintiff avoid doctor visits that would have resulted in diminished breath sounds. In fact, in response to a diagnosis of bronchitis in November 2007, the Plaintiff stated that she was not using her inhaler as frequently as she should because it made her very jittery. The objective medical evidence does not tend to prove one way or another the credibility of the Plaintiff's testimony regarding the frequency with which she needed to use a nebulizer, yet it is all the ALJ relied upon to discredit her statements. And, in rejecting her need to nebulize at all, the ALJ made his own independent medical findings. This led the ALJ to make conclusions regarding the Plaintiff's work-related functions without regard to the frequency or length of time the Plaintiff would have to spend away from work as a result of her breathing impairments and the need to nebulize. The limitation related to an indoor clean air environment free of pulmonary irritants, which the ALJ reasoned was already accounted for in the restriction for sedentary work, was not a sufficient substitute for these findings because it does not address any nonexertional restrictions that would be caused by the need to nebulize during the work day.

The ALJ's assessment of the Plaintiff's need to nebulize in relation to her RFC is not harmless error. A hypothetical posed to a VE must include "all limitations supported by medical evidence in the record." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). The VE testified that an individual with the Plaintiff's age, education, and work experience and RFC identified by the ALJ would be capable of performing jobs as a document preparer, call-out operator, and charge account clerk. When the ALJ asked the VE to assume the same age, education, and work experience, but to include limitations consistent with the Plaintiff's testimony, he responded that there would be no jobs available: "With those limitations, your Honor, there would be no jobs

13

[that] could be performed, according to testimony, frequent need to alternate sit and stand. And that she is nebulizing throughout the day. She has after effects." (R. at 746.)

Because it is not possible for the Court to track the ALJ's reasoning with regard to her need to nebulize and the impact of this need in combination with her other conditions and treatments, the Court cannot affirm the Commissioner's final decision as one that is supported by substantial evidence. The Magistrate Judge concluded:

> Being unable to discern how—apart from substituting his own judgment for that of a medical witness—the ALJ reached his determination that [the Plaintiff] does not need to use a nebulizer to manage her breathing conditions, the use of which may impact the number of sedentary jobs that she is able to perform, the undersigned Magistrate Judge recommends that the Commissioner's final decision be reversed and remanded for further proceedings.

(Report & Recommendation 16, ECF No. 36.) The Court adopts this finding and recommendation.

**CONCLUSION AND ORDER**

For the reasons stated above, the Court ADOPTS IN PART and MODIFIES IN PART the Report and Recommendation [ECF No. 36] and OVERRULES IN PART and SUSTAINS IN PART the Defendant's Objection [ECF No. 37]. The Commissioner's decision is REVERSED and this case is REMANDED for further proceedings in accordance with this Opinion and Order.

SO ORDERED on September 7, 2011.

 s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT